UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELENA MUNSON,

                Plaintiff,          Civil Action No. 18-CV-10850
                                                Honorable Judith E. Levy
v.                                             Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [21, 23]**

Plaintiff Helena Munson ("Munson") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed summary judgment motions (Docs. #21, #23), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Munson is not disabled under the Act prior to November 19, 2011. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #23**) be **GRANTED**, Munson's Motion for Summary Judgment (**Doc. #21**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Munson was 42 years old at the time of her alleged onset date of January 31, 2004, and at 5'4" tall weighed approximately 200 pounds during the relevant time. (Tr. 241-42). She completed high school attending special education classes. (Tr. 247). Her transcript indicates that she sometimes passed from grade to grade pursuant to "social promotion only." (Tr. 1292). However, she previously worked as a Certified Nurse Assistant ("CNA") for about five years. (Tr. 243, 1304). Additionally, over the years she worked in shipping and receiving, industrial packaging, and as a hotel housekeeper. (Tr. 243). Most recently, in 2011, she earned $12,950.00 babysitting her grandchildren. (Tr. 1034). Munson's alleged disabling conditions include: "degenerative disc disease, asthma, cognitive disorder, mood disorder, dyslexia and schizoaffective disorder." (Tr. 568).

This case unfortunately has a lengthy and somewhat tortured procedural history. Munson applied for benefits on December 20, 2006, but that application was initially denied. (Tr. 60). Eventually, an administrative hearing was held on July 14, 2009, before ALJ Daniel Dadabo. (Tr. 16-59). Munson, who was represented by attorney Phillip Fabrizio, testified at the hearing, as did vocational expert James Radke. (*Id.*). On August 27, 2009, the ALJ issued a written decision finding Munson not disabled under the Act. (Tr. 69-80). On May 14, 2010, the Appeals Council denied review. (Tr. 4-6). Munson timely filed for judicial review of the final decision on June 8, 2011. (Tr. 578-605).

On judicial review, the Honorable John Corbett O'Meara adopted the Report and Recommendation of Magistrate Judge Steven Whalen, and remanded the case for further consideration of Munson's credibility and the vocational expert's testimony. (Tr. 579-607).

Concurrently, Munson filed a new application for disability benefits on June 22, 2012. (Tr. 612). On August 12, 2012, the Michigan Disability Determination Service ("DDS") awarded SSI benefits with an onset date of May 28, 2012. (Tr. 612-13). DDS denied Munson's application for DIB benefits, however, given that her Date Last Insured ("DLI") was December 31, 2008. (*Id.*). The Appeals Counsel remanded the case back to the ALJ for a determination of whether Munson was disabled prior to May 28, 2012. (*Id.*).

ALJ Sasena held the subsequent hearing on June 19, 2013. (Tr. 620). ALJ Sasena issued a partially favorable decision finding Munson disabled since November 19, 2011, when she turned 50 years old.[1] (Tr. 630). The Appeals Council then remanded the case to the ALJ, yet again, for a determination of disability prior to November 19, 2011. (Tr. 640-41).

The Appeal's Council issued specific instructions to the ALJ on remand, including: 1) Evaluate whether good cause existed for Munson's failure to seek medical treatment for her mental illnesses; 2) Evaluate Munson's mental impairments in accordance with the sequential technique described in 20 §§ C.F.R. 404.1520a and 416.920a; 3) Give further consideration to Munson's maximum residual functional capacity during the entire period at issue; and 4) Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Munson's occupational opportunities. (Tr. 640-41).

ALJ Richard Sasena held a hearing on February 25, 2015. (Tr. 1340). However, over Munson's objections, on June 26, 2015, the Office of Disability Adjudication and Review reassigned the case to ALJ Anthony Smereka. (Tr. 1365-1417). ALJ Smereka held another hearing on December 3, 2015, to address the four specific issues outlined by the Appeals Council

---

[1] *See* 20 C.F.R. § 404.1563 (d) ("If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.").

3

and whether Munson was disabled prior to November 19, 2011. (*Id*). Munson, who was represented by attorney Eva Guerra, testified at the hearing, as did vocational expert Ms. Topsik. (*Id.*). On April 20, 2016, the ALJ issued a written decision finding that Munson was not disabled prior to November 19, 2011, but maintaining her entitlement to benefits commencing on November 19, 2011. (Tr. 565). It appears that on January 10, 2017, the Appeals Council denied review, which denial constitutes the Commissioner's "final decision" on Munson's application. (Tr. 545-50; *see also* Doc. #21 at 16 (referencing the January 10, 2017 date)). Munson filed for judicial review more than a year later, on March 14, 2018.[2] (Doc. #1).

The Court has thoroughly reviewed the transcript, which numbers over 1,400 pages, including Munson's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will

---

[2] Based on the January 10, 2017 date stamps on the Appeals Council's Notice (Tr. 545, 550), Munson's complaint appears to be about a year tardy. Section 405(g) of the Act provides, "Any individual, after any final decision of the Commissioner made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §405(g). This requirement is not jurisdictional in nature, but instead operates as a statute of limitations. *See Bowen v. City of New York*, 476 U.S. 467, 478 (1986). It therefore may be waived by the Commissioner if he fails to timely raise it as a defense. *See Ahghazali v. Secretary of Health and Human Servs.*, 867 F.2d 921, 924 (6th Cir. 1989). The Commissioner did not raise this issue as a defense, and has therefore waived it. *Id.*

However, the Court notes that Munson's complaint states, "This action is commenced within the appropriate time period set forth in the Notice of Appeals Council Action letter dated ***January 10, 2018***." (Doc. #1 at ¶3) (emphasis added). In other words, Munson alleges she timely filed her complaint based on the Appeals Council Notice being dated January 10, 2018. But, again, the Appeals Council Notice is actually dated January 10, 2017. (Tr. 545, 550). Even though it has no bearing on the outcome of Munson's case, this issue merits clarification by Munson's counsel. Accordingly, the Court will issue a separate Order requesting same.

4

make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.   The ALJ's application of the disability framework analysis

Under the Act, disability benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of the following five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the

analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Munson was not disabled under the Act prior to November 19, 2011. (Tr. 565). At Step One, the ALJ found that Munson engaged in substantial gainful activity in 2011. (Tr. 567). At Step Two, the ALJ found that since the alleged onset date of January 31, 2004, Munson had the following severe impairments: "degenerative disc disease, asthma, cognitive disorder, mood disorder, dyslexia and schozoaffective disorder." (Tr. 568.). At Step Three, the ALJ found that Munson's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment prior to November 19, 2011. (Tr. 568-69).

The ALJ then assessed Munson's residual functional capacity prior to November 19, 2011, concluding that she was capable of performing sedentary work, with the following additional limitations: "no hazards including work at unprotected heights or around dangerous moving machinery; no climbing of ladders, ropes or scaffolds; no driving in the course of employment; no more than moderate exposure to dust, fumes, odor, humidity or wetness and no temperature extremes; the ability for but a restriction to unskilled, simple, routine and repetitive work with little to no change in venue or judgment; no work with the general public; no more than occasional contact with supervisors or co-workers; no fast production pace work where the pace is set by others and limited reading ability although she can read a checklist and can learn by demonstration." (Tr. 571).

At Step Four, the ALJ found that Munson was not capable of performing her past relevant work as a CNA. (Tr. 575). At Step Five, the ALJ determined, that prior to November 19, 2011,

when Munson's age category changed, she could perform a significant number of jobs in the national economy. (Tr. 575). ALJ Smereka found, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Munson could perform the jobs of sorter (350,000 jobs nationally) and inspector (150,000 jobs). (Tr. 576). As a result, the ALJ concluded that Munson was not disabled under the Act prior to November 19, 2011. (Tr. 576).

### C. Standard of review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court

discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.    Analysis**

*1. Substantial gainful activity*

Munson challenges the ALJ's finding that she engaged in SGA in 2011. (Doc. #21 at page 25). The SSA states that earnings amounting to $1,000.00 a month or more constitute SGA for work done in 2011. *See* http://www.ssa.gove/oact/cola/sga/html. Munson reported earning $12,950.00 in 2011 as a general laborer. (Tr. 567). Clearly, on its face, the ALJ's finding is supported by substantial evidence.

The issue is that Munson testified that the earnings are illusory. Specifically, regarding these earnings, Munson testified that although she earned the income in question by "babysitting" her grandchildren, her "son essentially performed all the childcare duties and that she did no lifting or other tasks." (Tr. 567). The ALJ did not find this testimony very credible. (Tr. 567). In support of this finding, he stated that "[t]he claimant was evasive, shifted around in her chair, avoided eye contact and started crying when asked for more specific information regarding these issues." (*Id.*). As discussed below, the ALJ also reasonably discounted Munson's overall credibility in numerous other respects. *See infra* at 14-17. The ALJ also noted that Munson "took advantage of the earned income credit" on her income tax return, which is inconsistent with her assertion about not having

performed the work for which she was paid. (Tr. 567). The ALJ also noted that Munson previously had indicated a "willing[ness] to stipulate to a closed period of disability from the alleged onset date to the work activity in 2011," which is also inconsistent with Munson's position as to the SGA in 2011. (Tr. 567) (citing Tr. 1346-47).

When it comes to an ALJ's evaluation of the claimant's credibility, the Sixth Circuit has held that this Court should defer to the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable and, should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Indeed, the Sixth Circuit has held that such an evaluation should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Munson has provided no compelling reason to disturb the ALJ's reasoned finding. Therefore, this Court defers to the ALJ's evaluation and finds that substantial evidence supports the conclusion that Munson performed SGA in 2011.

*2. The paragraph B criteria*

As set forth above, at Step Three, ALJ Smereka found that Munson's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment prior to November 19, 2011. (Tr. 568-69). Munson argues that the ALJ erred in finding that she does not meet the criteria of Listing 12.05(b). (Doc. #21). Paragraph B of Listing 12.05 sets out the following framework to determine an Intellectual Disorder:

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

9

    b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by *extreme* limitation of one, or *marked* limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B. (emphasis added).[3]

    a. *IQ evidence*

Munson argues that the ALJ should have given "great" weight to a May 24, 2012 evaluation of Munson by Dr. Elain Tripi, an SSA consulting physician that listed Munson's IQ at 63, because the Appeals Council cited Dr. Tripi's evaluation in its December 5, 2013 Order. (Doc. #21 at page 38).

But, the Appeal's Council's December 5, 2013 Order stated that Dr. Tripi's evaluation on May 24, 2012, marked a "material change" from previous evaluations, specifically the evidence

---

[3] Munson notes that at the time this case was originally decided, the SSA had not implemented the new federal regulations regarding mental impairments, and, therefore, Munson also addressed the old Listing in her Motion. (Doc # 21). SSA's implementing date for the new listings was January 17, 2017. *See* https://www.federalregister.gov/documents/2016/09/26/2016-22908/revised-medical-criteria-for-evaluating-mental-disorders. The SSA applied the rules retroactively to all pending claims, stating: "[w]hen the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, **and to claims that are pending on or after the effective date."** *Id*.(emphasis added). Since this case is still pending, the new regulations apply.

10

prior to November 19, 2011. (Tr. 612). Therefore, this material change on May 24, 2012, is not relevant to the issue that was before ALJ Smereka. Indeed, the Appeals Council charged ALJ Smereka with an entirely different evaluation in its October 31, 2014 Order – whether Munson was disabled prior to November 19, 2011. (Tr. 640-42).

To this end, ALJ Smereka credited the testimony of Dr. Kent Layton, Psy.D., giving valid reasons for that decision, as discussed below. (Tr. 569). Dr. Layton is a medical expert that reviewed Munson's medical records and testified at her December 3, 2015 hearing that she did not meet Listing 12.05. (Tr. 1367-84).

Layton's testimony is examined using the factors outlined in 20 C.F.R. §§ 404.1527 and 416.927. These factors are: 1) Whether the medical source examined the claimant and the length and frequency of the examination; 2) The degree to which the source presented relevant evidence to support an opinion; 3) How consistent the opinion is with other opinions; 4) The specialization of the medical source; 5) Whether the source has a specialty or area of expertise related to the individual's impairments; and 6) Any factors that tend to support or refute the opinion. *See* 20 CFR §§ 404.1527; 416.927.

Although Dr. Layton did not assess Munson in person, he presented valid evidence in support of his opinion. (Tr. 1371-72). Specifically, he testified that Munson's intelligence tests were invalid because she is unable to read. (*Id.*). Munson counters this by stating that the Wechsler Adult Intelligence Scale ("WAIS"), the IQ test given by Dr. Tripi, does not require reading, so Munson's inability to read should not have affected the results. (Tr. 1381-82). Munson presented no actual evidence to corroborate this statement, however.

More importantly, Dr. Layton presented additional supporting evidence to explain his opinion. (Tr. 1372-84). Dr. Layton noted that Munson "had no psych hospitalizations and she

11

was logical and organized" during certain evaluations. (Tr. 1371). Dr. Layton pointed out that the mere fact that Munson worked for most of her life was inconsistent with an IQ score of 63. (Tr. 1371). In addition, Dr. Layton testified that Munson's work as a CNA, specifically, cast doubt on the validity of her intelligence scores. (Tr. 1383). Munson had to take a two-week certification course to be a CNA, and chart patient's vital signs. (Tr.569). Dr. Layton explained that the ability to perform this type of work is indicative of an intelligence level higher than what is required in the listings. (Tr. 1371-84). Munson claims a friend helped her complete the CNA certification course. (Tr. 1387-89). She also claims she worked nights and, throughout her multi-year career as a CNA, was always scheduled with a friend that assisted her in her duties. (*Id*.). As discussed herein, ALJ Smereka found this testimony to be lacking in credibility. (Tr. 569).

Dr. Layton also testified that he is a licensed clinical psychologist and has worked on over 3,000 Social Security cases. (Tr. 1370). Therefore, he has a specialty in assessing impairments. (*Id*.).

Finally, the ALJ pointed out that "Dr. Kriauciunas opined in an assessment from 2005 that the claimant's vocational and interpersonal history reflects higher cognitive functioning within the measured IQ scores." (Tr. 571) (citing Tr. 436) ("Vocational & interpersonal history suggests higher cognitive functioning than measured IQ scores."). This evidence is consistent with Dr. Layton's opinion regarding the validity of the previous intelligence testing.

For all of the above reasons, the ALJ's decision to credit Dr. Layton's testimony and opinion satisfies the criteria of 20 C.F.R. §§ 404.1527 and 416.927(d) and is supported by substantial evidence.

    b. *Adaptive functioning*

Munson also challenges the ALJ's findings regarding her adaptive functioning. (Tr. 569-

70). When evaluating adaptive functioning, an ALJ looks at "a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *See Hayes v. Comm'r Soc. Sec.,* 357 Fed. Appx. 672, 677, 2009 WL 4906909 (6th Cir. 2009) (citing *Heller v. Doe*, U.S. 312, 319, 113 S. Ct. 2637, 125 L.Ed. 257 (1993)).

The ALJ found Munson had "*moderate* restriction in activities of daily living, *moderate* difficulties in maintaining social functioning, *marked* difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation." (Tr. 568-69) (emphasis added).

In making these findings, the ALJ relied on various pieces of evidence in the record. First, he noted Dr. Layton's opinion that Munson did not meet Listing 12.05. (Tr. 569, 1370-71). As noted above, the ALJ had valid reasons for crediting Dr. Layton's opinion. The ALJ also noted that Munson worked most her life and that even Munson's testimony regarding receiving assistance at work with tasks requiring reading illustrated her resourcefulness and ability to adapt. (Tr. 569). The ALJ also reasonably determined, based in part on his overall credibility determination, that Munson did not show that she was "wholly reliant" on others in performing her work as a CNA over almost a five-year period. The ALJ also stated that Munson's use of cocaine from ages 19-29 complicated the issue of adaptive functioning during the relevant time, *i.e.*, prior to age 22. (*Id.*). Specifically, Munson testified that her cocaine use led to criminal problems, including "probation for a period of time." (Tr. 570). Lastly, the ALJ noted that Munson had been able to "raise children and grandchildren, hold employment, and live independently." (Tr. 571). Together, these factors constitute substantial evidence supporting the ALJ's adaptive functioning finding.

### c. *Disorder prior to 22*

Regarding whether Munson had an intellectual disorder prior to age 22, the ALJ stated that "[a]lthough there are IQ scores that fall within the range required by the listing, there is no evidence that the claimant was functioning in the mentally retarded range of intelligence prior to age 22 and her vocation and personal history does not support such a finding as an adult." (Tr. 571). The ALJ considered Munson's school records but indicated that even though the records indicated "social promotion only," they did not show "that she was functioning in the range required by listing 12.05." (*Id.*). He also considered the testimony of Dr. Layton and supporting medical documentation from Dr. Kriauciunas. (*Id.*). As discussed above, substantial evidence supports this reasoning.

### 3. *Subjective symptom evaluation*

Munson challenges the ALJ's assessment of her credibility.[4] Specifically, Munson challenges the ALJ's finding that the "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the evidence." (Tr. 572; Doc. # 21 at page 47). She also challenges the ALJ's evaluation of her reasons for not seeking mental health treatment.

As stated previously, the Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable and, should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human*

---

[4] SSR 96-7p has been superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In contrast to the superseded ruling, SSR 16-3p eliminates the use of the term "credibility" from SSA policy, making clear that "subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *2. The new ruling, which applies to decisions or determinations made after March 28, 2016, does not change the two-step regulatory process for evaluating a claimant's subjective complaints or the regulatory factors for consideration of a claimant's symptoms.

14

*Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, such an evaluation will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *4 (Oct. 25, 2017).  In making such an adjudication, a "single, conclusory statement" asserting consideration of the individual's symptoms or reciting the factors in the regulations is insufficient.  *Id.* at *10.  Instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*

Moreover, regarding an applicant's failure to seek medical treatment for a mental impairment, Social Security Ruling 96-7 provides that an adjudicator must consider the applicant's explanations prior to drawing any inferences regarding such failure:

> The adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.  The adjudicator may need to re-contact the individual or

15

> question the individual at the administrative hearing in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

SSR 96-7, 1996 WL 374196, at *7 (July 2, 1996).

Here, the ALJ reviewed the record evidence in making his determination and explained his reasoning for this assessment throughout the decision.[5] (Tr. 567-70). For example, he noted that Munson's testimony regarding her mental inabilities were inconsistent with her ability to complete a CNA certification program and work as a CNA for at least five years. (Tr. 569). Likewise, the ALJ found Munson's subjective testimony regarding needing the assistance of a family member to obtain a driver's license lacking support from the record. (Tr. 570).

In addition, regarding Munson's failure to seek medical treatment for her mental impairments, the ALJ did not find good reasons for such failure. (Tr. 570). The ALJ noted that Munson was covered by insurance when she was a CNA. (Tr. 570.) Thereafter, Munson had insurance through Medicaid. (*Id.*) More importantly, the ALJ gave little weight to Munson's "testimony that she did not know she had a problem and did not know where to get help," and Munson offered no other explanation. (Tr. 570, 1395). The Court also notes that Munson worked in the health care industry for about five years as a CNA.

In arguing error by the ALJ, Munson relies on studies from the Centers for Disease Control and the Rand Corporation to support her testimony of not knowing she had a problem. (Doc. # 21 at pages 42-44). She points out in her brief that just "7.6 percent of African-Americans sought treatment for depression in 2011." (Doc. #21 at page 44). She also points out that individuals with

---

[5] It is noteworthy that both ALJ Dadabo (Tr. 77-79) and ALJ Sasena (Tr. 626-28) also had issues with Munson's subjective complaints.

schizoaffective disorder have a particularly difficult time with being aware that they are even ill. (*Id.*).

While the Court acknowledges the problems highlighted by these studies, these studies cannot override the ALJ's reasonable evaluation of Munson's subjective complaints based on the evidence in the record. Applying the above cited case-law regarding this Court's duty to give deference to the ALJ's subjective evaluations and not disturb this evaluation absent "compelling evidence," this Court must give deference to the ALJ's assessment of Munson's complaint about not knowing she had a problem and where to get help. In sum, the Court finds that substantial evidence exists to support the ALJ's conclusion that there was not good cause for Munson's failure to seek medical treatment.

### 4. *Residual functional capacity*

Munson challenges the portion of the ALJ's RFC finding that states, "no more than ***moderate*** exposure to dust, fumes, odors, humidity, or wetness and no temperature extremes." (Doc. #21, p. 39; Tr. 571) (emphasis added). Munson points to the fact that a previous doctor indicated that Munson should "***never*** be around humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold and vibrations" due to her asthma. (Doc. #21, p. 39; Tr. 540) (emphasis added).

The ALJ considered Munson's asthma, but also noted Munson's long history of smoking. (Tr. 574). The ALJ reasoned that this history "negates an imposition of working in a totally clean air environment." (Tr. 574.) Moreover, the vocational expert testified that the jobs she listed would exist even with a restriction to no pulmonary irritants. (Tr. 1408). The ALJ's decision in this respect is both reasonable and supported by substantial evidence in the record.

For all the above reasons, and upon an independent review of the entire record, the Court

concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #23**) be **GRANTED**, Munson's Motion for Summary Judgment (**Doc. #21**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: July 24, 2019   s/David R. Grand
Ann Arbor, Michigan   DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise,

and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
